UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SPEROS A. BATISTATOS,<br>    Plaintiff,<br><br>    v.<br><br>LAKE COUNTY CONVENTION AND<br>VISITORS BUREAU d/b/a SOUTH<br>SHORE CONVENTION AND VISITORS<br>AUTHORITY, *et al.*,<br>    Defendants. | )<br>)<br>)<br>)   CAUSE NO.: 2:22-CV-254-JVB-JEM<br>)<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss [DE 95] filed by Defendants Thomas M. McDermott, Jr., and the City of Hammond on December 1, 2023. Plaintiff Speros A. Batistatos filed a response on December 22, 2023, and McDermott and Hammond filed a reply on January 5, 2024.

This matter is also before the Court on a Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss [DE 101] filed by Batistatos on January 12, 2024, to which McDermott and Hammond responded on January 26, 2024, and Batistatos replied on February 2, 2024.

**PROCEDURAL BACKGROUND**

Plaintiff Speros A. Batistatos initiated this lawsuit by filing a complaint in this Court on August 29, 2022. His claims center on the termination of his employment with the Lake County Convention and Visitors Bureau, doing business as South Short Convention and Visitors Authority (SSCVA), as its President and CEO. After Defendants filed an initial round of motions to dismiss, Batistatos filed an Amended Complaint on December 5, 2022. In that pleading, Batistatos brings claims against McDermott and Hammond for tortious interference with contractual and business

relationships, defamation per se and per quod, injurious falsehoods, and a claim for damages based on concerted action.

In ruling on a previous motion to dismiss, the Court dismissed the tortious interference claim against McDermott and Hammond for failure to state a claim. The Court denied without prejudice the request in the prior motion to dismiss claims under Indiana's Anti-SLAPP Act to allow time for discovery and a reasonable opportunity to present the pertinent material to the Court.

## MOTION FOR SURREPLY

Batistatos has moved for leave to file a surreply. Motions for surreplies are not contemplated by the Northern District of Indiana Local Rules and are disfavored. Courts in this district generally allow a surreply only if it "raises or responds to some new issue or development in the law." *Gillaspy v. Club Newtone, Inc.*, No. 4:20-CV-13, 2022 WL 4235014, at *3 (N.D. Ind. Sept. 14, 2022) (quoting *Stack v. Menard, Inc.*, No. 3:19-CV-310, 2021 WL 1165138, at *2) (N.D. Ind. Mar. 25, 2021)). Batistatos argues that McDermott and Hammond raised new items in their reply that connect to a brand new argument made in that brief: that McDermott's statements may not be completely accurate but are close enough to the truth to be eligible for protection by the Anti-SLAPP statute. However, this is not a brand new argument. In their opening brief, McDermott and Hammond contend that "minor inaccuracies do not amount to falsity," and, instead of arguing that the contested statements are absolutely true, argue that the statements have a "reasonable basis in law and fact." *See* (Br. at 16, 17, 19, 23, ECF No. 96). Here, a surreply is not warranted, so the Court denies the motion for surreply.

## MOTION TO DISMISS

McDermott and Hammond have moved to dismiss Batistatos's claims against them. They argue that the defamation claims should be dismissed under Indiana's Anti-SLAPP Act, that the

2

individual and official capacity claims against McDermott should be dismissed under the Indiana Tort Claims Act, and that the concerted action claim should be dismissed because there is no independent tort to support the claim.

### A. Anti-SLAPP Act

*1. Legal Standard*

"When citizens are faced with meritless retaliatory lawsuits designed to chill their constitutional rights of petition or free speech, also known as Strategic Lawsuits Against Public Participation (SLAPP), Indiana's anti-SLAPP statute provides a defense." *Gresk for Est. of VanWinkle v. Demetris*, 96 N.E.3d 564, 566 (Ind. 2018). "Defendants may invoke the anti-SLAPP defense when faced with a civil action for acts or omissions 'in furtherance of the person's right of petition or free speech' under the United States Constitution or Indiana Constitution 'in connection with a public issue' and 'taken in good faith and with a reasonable basis in law and fact.'" *Id.* at 568-69 (quoting Ind. Code § 34-7-7-5).

> Upon receiving an anti-SLAPP motion to dismiss, the court must determine three things: (1) whether an action was "in furtherance of the person's right of petition or free speech;" and, (2) if so, whether the action was "in connection with a public issue." If both requirements are satisfied, the court then analyzes (3) whether the action was "taken in good faith and with a reasonable basis in law and fact."

*Id.* at 569 (citations omitted).

"A motion to dismiss under Indiana's anti-SLAPP statute is treated as a motion for summary judgment." *Id.* at 567 (citing Ind. Code § 34–7–7–9(a)(1)); *see also* Fed. R. Civ. P. 12(d) (permitting the conversion of a motion to dismiss to a motion for summary judgment where, as is the case here, matters outside of the pleadings have been presented to the Court).

In federal court, a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

3

a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying the evidence, if any, which it believes demonstrates the lack of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, the burden shifts to the non-moving party to showing that an issue of material fact exists. *Keri v. Bd. Of Tr. Of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

2.  *Claims and Statements at Issue*

McDermott and Hammond contend that both defamation claims and the injurious falsehood claim should be dismissed under the Anti-SLAPP Act. Batistatos argues that the Anti-

SLAPP Act does not apply to the injurious falsehood claim.[1] However, it is the same alleged statements by McDermott that give rise to all three claims. As noted above, the Anti-SLAPP Act is concerned with actions taken in furtherance of the rights of free speech or to petition that are made on public issues, so long as those actions are taken in good faith with a reasonable basis in fact and law. Because the underlying actions are the same for all three claims, the Anti-SLAPP Act applies equally to the injurious falsehood claim as it does to the defamation claim.

The Court here recounts McDermott's statements on which Batistatos builds his claims for defamation per se, defamation per quod, and injurious falsehoods.

Batistatos alleges that McDermott stated he "wield[ed] tax money like a weapon" (Am. Compl. ¶ 148, ECF No. 40); that as President/CEO he "made up his own rules" and was "picking his own boss," "basically pack[ing] a board full of people that would approve his salary," *id.* ¶¶ 150; that "waste, fraud and abuse" was occurring at the SSCVA under Batistatos's leadership, which Batistatos maintains implies criminal or illegal activity, *id.* ¶ 149; that he made $330,000 in salary, which is "two and half times" McDermott's own salary, *id.* ¶¶ 152, 155; that Batistatos "made up the law," *id.* ¶¶ 157, 160; that he "uses [tax money] as he sees fit," distributing it "based on how he feels" and "at his whim along with his Board"; *id.* ¶¶ 158, 160; and that Batistatos is "a petty piece of crap" for refusing to invite McDermott to his Christmas party "out of spite because I dare question him." *Id.* ¶ 158.

Batistatos also alleges that McDermott "falsely stated" that Batistatos's "lawyers admitted he broke the law when they entered into the consent decree with us." *Id.* ¶¶ 220, 237. Batistatos

---

[1] There is something of an open question of whether Indiana recognizes a claim for injurious falsehood, which protects economic interests harmed by false statements (in contrast to the reputational interests protected by defamation claims). *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 279 (7th Cir. 2016). Because there is no argument before the Court that the claim should be dismissed as not recognized by Indiana law, however, the Court declines to consider the question further.

5

further alleges that McDermott said "Kevin, we pulled his credit card records. He would spend $25,000 in one month," and stated that Batistatos's credit card bills of $20,000 and $15,000 in consecutive months were "outrageous," accusing Batistatos of "wasting taxpayer money at Ruth's Chris spending $6,000 on one meal. How many $200, $300 bottle of wines did that include?" and insinuating that the expenses were incurred to court votes. *Id.* ¶¶ 160, 220, 237.

Batistatos further alleges that McDermott accused Batistatos of facilitating a conspiracy. The statement itself is "If I control all my Board members on there, and they're all part of the conspiracy with me, then I can make 330 grand on the down low, which [is] outrageous money." *Id.* ¶ 151. McDermott allegedly spoke about Hammond's lawsuit against the SSCVA: "it was originally filed against them, and it was because of the jackass behavior of the CEO because he was ignorant of the law and he was a punk about it." *Id.* [2]

3. *Analysis*

McDermott and Hammond assert that the claims for defamation (per se and per quod) and injurious falsehood should be dismissed under Anti-SLAPP. In the Amended Complaint, Batistatos specifically connects each claim to statements made on the Left of Center podcast. *See* (Am. Compl. ¶¶ 211, 228, 245, ECCF No. 40).

   a.    In Furtherance of Free Speech Rights

The first step of the Anti-SLAPP analysis is to determine whether the contested actions were taken in furtherance of free speech rights. Batistatos complains of McDermott's statements

---

[2] Batistatos also alleges that McDermott stated on the October 19, 2020 Make My Day program that Batistatos is "the most corrupt official in Northwest Indiana" and called Batistatos's alleged expenditures "criminal." (Am. Compl. ¶ 144, ECF No. 40). Batistatos further alleges that McDermott continued, saying only "the feds" could do something about Batistatos's alleged corruption. *Id.* ¶ 145. However, since Batistatos specifically alleges in his amended complaint that the defamation and injurious falsehoods were communicated on the Left of Center podcast, these statements are outside the scope of those claims. *See id.* ¶¶ 211, 228, 245. Because this pleading does not allege defamation or injurious falsehood predicated on the statements on the Make My Day podcast (or on any statements not made on the Left of Center podcast), this Opinion and Order should not be construed as making a ruling on whether those statements would survive an Anti-SLAPP Act motion.

made on the Left of Center podcast. McDermott and Hammond assert that these statements are political speech that fall squarely within the purview of the right to free speech. Batistatos disagrees.

"Persons exercising their right of free speech do so to advance 'the public exchange of ideas' essential to a healthy democracy." *Gresk*, 96 N.E. 564 at 569 (citing *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011)). That is, "the First Amendment protects the 'unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Id.* at 570 (quoting *Lach v. Lake Cty.*, 621 N.E.2d 357, 358 (Ind. Ct. App. 1993)).

The statements at issue were about the job performance and remuneration of Batistatos as the head of the SSCVA, an entity that receives revenue from hotel taxes. Unlike cases in which the speech at issue was compelled or confidential, *see id.* (holding that the compulsory and confidential report of suspected child abuse was not made in furtherance of free speech rights), the speech here was made in furtherance of free speech rights.

      b.      In Connection with a Public Issue

"[S]peech relates to a matter of public concern if it is addressed to 'any matter of political, social, or other concern to the community, as determined by [its] content, form, and context.'" *Daly v. Nexstar Broad., Inc.*, 542 F. Supp. 3d 859, 870 (S.D. Ind. 2021).

In *Daly*, a motorsports commentator and former racecar driver's use of a racial slur during a live interview was found to be a public issue. 542 F. Supp. 3d at 870. Though the use of the slur had occurred several years before the news story at issue, the court found that it was part of a larger story that had been dominating the airwaves and was subject to significant public interest. *Id.*

Similar to the media coverage of the topic at issue in *Daly*, a local newspaper, the Northwest Indiana Times, published articles on Batistatos and his role at the SSCVA, including

7

articles titled "NWI tourism head's six-digit salary, benefits raising eyebrows after record inquiry" (published September 15, 2020), "Leaders react to tourism bureau CEO's $336,000 in salary, benefits; 'pure politics' alleged" (published September 16, 2020), "$35K in steakhouse dinners among tourism bureau's 2016-20 charges" (published September 27, 2020), "Speros Batistatos to be out as Region tourism head, agency board members say" (published June 24, 2021), and "SSCVA board concerned with ballooning cost of CEO's compensation (published June 26, 2021). *See* (Mot. Ex. B, ECF No. 95-5). With this amount of news coverage, the Court concludes that the job performance and remuneration of Batistatos in his role as head of an organization whose revenue comes from tax money is a public issue.

Batistatos's assertion that "*false accusations* of theft, misuse of funds, and other criminal acts are not matters of public concern" misses the point. *See* (Resp. at 15, ECF No. 97). For the current analysis, the topic is "theft, misuse of [tax-generated] funds, and other criminal acts,"[3] and this topic, properly considered, falls squarely within the public concern.

Batistatos takes issue also with McDermott's statements calling Batistatos a "punk," "jackass," and "piece of crap," saying that McDermott's personal views of Batistatos are not matters of public concern. However, the statement including the "punk" and "jackass" insults was about the lawsuit Hammond initiated against the SSCVA on the allegations that the SSCVA refused to seat the member of the board that Hammond had appointed. *See* (Am. Compl. ¶ 151). The "piece of crap" insult was made in the context of challenging how Batistatos, as head of the SSCVA, spent the tax-generated revenue that flows to the SSCVA and how Batistatos treated those

---

[3] The asserted falsity of statements made on the topic is a separate consideration that comes into play when the merits of the claims are analyzed (that is, when determining whether the statements at issue are *defamatory* or are injurious *falsehoods*).

8

who questioned his decisions at the SSCVA. *See id.* ¶ 158. Like the slur in *Daly*, these insults are part of a larger narrative that falls within the public concern.

### 3. Taken in Good Faith and With a Reasonable Basis in Law and Fact

Indiana courts look at good faith in the context of defamation law when determining the good faith and reasonable basis step of an Anti-SLAPP motion. *See Sabosz v. Friedman*, 199 N.E.3d 800, 809-10 (Ind. Ct. App. 2022); *Pack v. Truth Publ'g Co.*, 122 N.E.3d 958, 966 (Ind. Ct. App. 2019). "In the context of defamation law, good faith has been defined as a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and a belief that one's conduct is not unconscionable." *Sabosz*, 199 N.E.3d at 809-10 (quoting *Pack*, 122 N.E.3d at 966). McDermott and Hammond have submitted McDermott's affidavit and accompanying exhibits as evidence that he made his statements in good faith and with a reasonable basis in law and fact. Batistatos has likewise presented the Court with a declaration and supporting exhibits to show that the Anti-SLAPP motion should fail.

From the evidence presented, there is a genuine issue of material fact whether at least one statement was made in good faith and with a reasonable basis in law and fact.

For McDermott's statement that Batistatos made $330,000 in "salary," being two and a half times more that McDermott's own salary, (Am. Compl. ¶¶ 152, 155, ECF No. 40), and McDermott's related statement that "[i]f I control all my Board members on there, and they're all part of the conspiracy with me, then I can make 330 grand on the down low, which [is] outrageous money," *id.* ¶ 151, McDermott and Hammond's evidence is that his review of the SSCVA's response to a public records request led McDermott to conclude that Batistatos' total compensation in 2018 was $336,001.37, (McDermott Aff. ¶ 20, ECF No. 95-1); *see also* (McDermott Aff. Ex. 6 at 15-16, ECF No. 95-2).

Batistatos counters that McDermott is an attorney, a finance major, and a self-described "pretty smart guy," (McDermott Dep. 7:8-9, 56:21-22, ECF No. 97-2). Thus, Batistatos argues, McDermott knew the difference between salary and total compensation. The evidence shows "total compensation and benefits" of $336,001.37, which includes base salary on $158,234.54 with a bonus (for the prior year's performance review) of $25,672.50, longevity bonus of $620, vehicle waiver of $19,999.98, and vacation buyout of $28,070.90 for gross wages of $232,597.92. (McDermott Aff. Ex. 6 at 15, ECF No. 95-2). Batistatos's benefit package, including insurance and retirement benefits, totaled $103,403.45. *Id.* at 16.

Batistatos also notes that the record shows his base salary to be $158,000 and McDermott stated that his own salary at his 2023 deposition was $160,000. *Compare* (McDermott Aff. Ex. 6 at 15, ECF No. 95-2 (Batistatos salary) *with* (McDermott Dep. 19:17-20:8, ECF No. 97-2 (McDermott salary)). Thus McDermott's statement of Batistatos's salary being two and a half times more than McDermott's salary is inaccurate. Batistatos affirms in his declaration that his base salary plus annual bonus between 2012 and 2020 never exceeded $192,000. (Batistatos Decl. ¶ 19, ECF No. 97-1). Batistatos also argues that it is inaccurate to say that his compensation package was "on the downlow" or "on the sly" when it was fully approved by the SSCVA board. *See id.* ¶¶ 21-22.

From the evidence presented, there is a genuine issue of material fact McDermott's description of Batistatos's total compensation package as a salary (especially when making a supposedly apples-to-apples comparison with McDermott's own salary) was not made in good faith and lacked a reasonable basis in fact. Dismissal of either of the defamation claims or the injurious falsehood claim under the Anti-SLAPP Act is not appropriate. McDermott and Hammond would have the Court find that McDermott's statement was close enough to the truth

10

to defeat a defamation claim, but the difference between a base salary of $158,000 (or even a salary including bonus of $192,000 or gross wages of $232,000) and the $330,000 described as Batistatos's salary is too great is be considered a minor inaccuracy that does not amount to falsity. *See Love v. Rehfus*, 946 N.E.2d 1, 15 n.13 (Ind. 2010) (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516-17 (1991)).

This conclusion determines the outcome of the request for dismissal under the Anti-SLAPP Act. The parties discuss other of McDermott's statements in their briefs, but in the interest of judicial economy, the Court will not recount those matters here.

### B. Indiana Tort Claims Act

Unlike the arguments under the Anti-SLAPP Act, the Indiana Tort Claims Act (ITCA) argument is one for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Yet "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 661, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id*. (citing *Twombly*, 550 U.S. at 570).

11

The standard has three requirements. "First, a plaintiff must provide notice to defendants of [their] claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

McDermott asserts that the claims brought against him in his individual capacity are barred by the Indiana Tort Claims Act and that the claims brought against him in his official capacity are redundant with those brought against Hammond. Under ITCA, to state a tort claim against an individual state employee, a claimant must allege that the employee's act or omission was criminal, clearly outside the scope of employment, malicious, willful and wanton, or calculated to benefit the employee personally. Ind. Code. § 34-13-3-5(b).

Batistatos alleges that the statements giving rise to the defamation and injurious falsehood claims "were made with actual malice." (Am. Compl. ¶¶ 223, 240, 257, ECF No. 40). The allegations of the amended complaint provide the necessary factual matter to support this legal conclusion. Batistatos alleges that McDermott has a "decade-long vendetta" against him that McDermott pursued "by making untruthful and disparaging remarks" about Batistatos, including referring to him as his "archenemy." *Id.* ¶¶ 142-43. Batistatos has alleged enough factual matter to withstand the motion to dismiss the individual capacity claims under ITCA.

As for the official capacity claims, however, Batistatos does not dispute McDermott's and Hammond's characterization of these claims as duplicative. Wisely so, as the Supreme Court has instructed that "[o]fficial-capacity suits, in contrast [to personal-capacity lawsuits], 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, n.55 (1978)). Accordingly, the Court dismisses the claims brought against McDermott in his official capacity.

### C. Concerted Action

Under Indiana law, a concerted action claim (also known as a civil conspiracy claim) is not an independent cause of action but rather a cause of action for damages that must be alleged with an underlying tort.[4] *Gordon v. Bank of New York Mellon Corp.*, 964 F. Supp. 2d 937, 942 (N.D. Ind. 2013). All parties acknowledge that this argument rises and falls with their other arguments for Batistatos's claims either withstanding or succumbing to this motion to dismiss. Because the defamation claims and injurious falsehood claim survive, the concerted action claim survives as well.

### CONCLUSION

Based on the above, the Court hereby **DENIES** the Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss [DE 101]and **GRANTS in part and DENIES in part** the Motion to Dismiss [DE 95].

The Court **DISMISSES** the official-capacity claims against McDermott. All other claims survive.

SO ORDERED on June 18, 2024.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT

---

[4] Though *Carter v. State Farm Fire & Cas. Co.*, 850 F. Supp. 2d 946, 952 (S.D. Ind. 2012), questioned whether civil claims not sounding in tort could support a concerted action claim, the Indiana Court of Appeals has reaffirmed that concerted action claims "must be considered together with an underlying alleged tort." *Holland v. Ketcham*, 181 N.E.3d 1030, 1039 (Ind. Ct. App. 2021) (quoting *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014)).